SILLS CUMMIS EPSTEIN & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey  07101-5400
(973) 643-7000
Attorneys for Plaintiff Reed Elsevier, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| REED ELSEVIER, INC.,<br><br>     Plaintiff,<br><br>-vs-<br><br>INHERENT.COM, INC. a/k/a INHERENT, INC.,<br><br>     Defendant. | Civil Action No. 05-4048 (JLL) |

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

On the Brief:

    Mark E. Duckstein
    Michele C. Lefkowitz

Table of Contents

Page

PRELIMINARY STATEMENT ............................................................................................... 1
STATEMENT OF FACTS ....................................................................................................... 2
    A.    ICI proposes an acquisition deal to MH ............................................................... 2
    B.    The parties sign the Non-Binding Letter of Interest ............................................. 3
    C.    MH informs ICI on June 28, 2005, that it does not wish to proceed with any transaction with ICI ............................................................................................. 4
    D.    ICI accuses MH of breaching the Non-Binding Letter of Interest, thereby prompting this litigation ..................................................................................... 5
LEGAL ARGUMENT ............................................................................................................. 6
POINT I ................................................................................................................................... 6
    RE IS ENTITLED TO SUMMARY JUDGMENT DECLARING THAT THE NON-BINDING LETTER OF INTEREST DID NOT IMPOSE AN OBLIGATION ON MH TO PURCHASE ICI'S ASSETS ................................................. 6
POINT II .................................................................................................................................. 9
    ICI'S CLAIMS THAT THE NON-BINDING LETTER OF INTEREST REQUIRED IT TO SUSPEND ITS SALES AND COLLECTION ACTIVITIES MUST BE DISMISSED BECAUSE THEY ARE CONTRARY TO THE EXPRESS TERMS OF THE CONTRACT ............................................................................. 9
POINT III ................................................................................................................................ 12
    ICI'S FRAUD CLAIM SHOULD BE DISMISSED BECAUSE ICI HAS FAILED TO PLEAD FRAUD WITH SUFFICIENT PARTICULARITY AND BECAUSE THERE IS NO GOOD FAITH BASIS FOR THE ALLEGATIONS ASSERTED ............................................................................................................ 12
    A.    ICI's conclusory allegations of fraud are insufficient to meet the pleading requirement of Fed. R. Civ. P. 9(b) and should be dismissed. .............................. 12
    B.    The fraud claim should be dismissed because it lacks a good faith basis ............ 14
CONCLUSION ....................................................................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

American Flint Glass Workers Union v. Beaumont Glass Co.,
62 F.3d 574 (3d Cir. 1995) ............................................................................................. 7

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ....................................................................................................... 6

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ....................................................................................................... 6

Cobb v. Philadelphia Gas Works,
No. 04-2172, 2004 U.S. App. LEXIS 26044 (3d Cir. Dec. 15, 2004) ........................... 6

De Bruno v. Sotheby Parke Bernet, Inc.,
Civil Action No. 84-3021, 1984 U.S. Dist. LEXIS 24919 (D.N.J. Nov. 8, 1994) ....... 14

Emerson Radio Corp. v. Orion Sales, Inc.,
253 F.3d 159 (3d Cir. 2001) ..................................................................................... 7, 11

Hubicki v. ACF Industries,
484 F.2d 519 (3d Cir. 1973) ........................................................................................... 7

LeJeune v. Bliss-Salem, Inc.,
85 F.3d 1069 (3d Cir. 1996) .................................................................................. 7, 9, 11

Lum v. Bank of America,
361 F.3d 217 (3d Cir.), cert. denied, 543 U.S. 918 (2004) ........................................... 13

Martin v. Monumental Life Insurance Co.,
240 F.3d 223 (3d Cir. 2001) ..................................................................................... 7, 11

NN&R, Inc. v. One Beacon Insurance Group,
362 F. Supp. 2d 514 (D.N.J. 2005) .............................................................................. 14

Rolo v. City Investing Co. Liquidating Trust,
155 F.3d 644 (3d Cir. 1998) ......................................................................................... 13

Seville Indus. Machine Corp. v. Southmost Machine Corp.,
742 F.2d 786, 791 (3d Cir. 1984), cert. denied, 469 U.S. 1211 (1985) ....................... 13

Silver v. American Institute of Certified Public Accountants,
Civil Action No. 01-4910 (JWB), 2005 U.S. Dist. LEXIS 18108
(D.N.J. Aug. 15, 2005) ................................................................................................. 12

SmithKline Beecham Corp. v. Rohm & Hass Co.,
89 F.3d 154 (3d Cir. 1996)..................................................................................................7

Zavala v. Wal-Mart,
393 F. Supp. 2d 295 (D.N.J. 2005) ...................................................................................13

## STATUTES

Fed. R. Civ. P. 9(b) ......................................................................................................2, 12, 13

Fed. R. Civ. P. 56.................................................................................................................6

## PRELIMINARY STATEMENT

The central focus of the dispute at issue in this matter is a contract between Martindale-Hubbell ("MH"), a division of plaintiff Reed Elsevier, Inc. ("RE"), and defendant Inherent.com a/k/a Inherent, Inc. ("ICI"). Indeed, both RE and ICI are seeking a declaratory judgment interpreting the contract; in addition, ICI has tacked onto its Counterclaim a few conclusory assertions alleging fraud and interference with contract. The contract at issue in this case is so clear and unambiguous, and ICI's tort claims are so barren of supporting facts and contradictory to the parties' contractual agreement, that the case is ripe to be resolved by summary judgment before RE is forced to incur the unnecessary expense of discovery.

The claims asserted in this matter arise from the parties' discussions about the possibility of entering into a corporate purchase (or other similar transaction) whereby MH would buy ICI's assets. To allow MH to evaluate its interest in engaging in a transaction with ICI, the parties executed a Non-Binding Letter of Interest ("Non-Binding Letter of Interest") to govern and facilitate their discussions. It is this Non-Binding Letter of Interest that ICI claims to be a contract for the purchase of ICI's assets that was breached by MH when it decided not to pursue the proposed acquisition. MH's decision to end its interest in acquiring ICI's assets could not breach the Non-Binding Letter of Interest, however, because the Non-Binding Letter of Interest does not require MH to consummate any deal with ICI. To the contrary, the Non-Binding Letter of Interest served the singular purpose of allowing the parties to engage in the due diligence necessary for MH to determine *if* there was any interest on its part in pursuing a transaction with ICI.

ICI also asserts three separate claims alleging that MH prevented ICI from performing sales activities and from billing its clients for work performed. These claims are baseless. MH never requested that ICI suspend these activities and ICI has no reason to believe that it did. In

1

fact, the terms of the Non-Binding Letter of Interest clearly and unambiguously state that ICI was obligated to continue all normal business operations. ICI's claims ignore this clear contract language, and therefore should be dismissed.

Finally, ICI's fraud claim should be dismissed because it is asserted in conclusory fashion that is in violation of Fed. R. Civ. P. 9(b), is based on pure speculation, and was asserted without a good faith factual basis. Contrary to ICI's claim, MH returned to ICI all documentation and information, proprietary or otherwise, that it reviewed during its due diligence review (and provided Certifications attesting to the fact that the MH due diligence representatives had complied with the parties' agreement as to how such information would be disposed of upon termination of the review). MH has not improperly used any information -- and, more importantly, ICI has no legitimate factual basis to believe that it has. ICI's claim is simply meritless and has been asserted solely for the purpose of litigation leverage.

## STATEMENT OF FACTS

### A. ICI proposes an acquisition deal to MH.

In approximately August 2004, ICI, through its President, Debra Kamys, contacted MH about whether MH would be interested in exploring a possible acquisition of ICI or entering into some other sort of partnering arrangement. A competitor of MH had recently acquired a competitor of ICI, and Ms. Kamys suggested that a proper competitive response to that transaction might be for MH to acquire ICI. [See Declaration of Timothy Corcoran, dated September 9, 2005, previously submitted in opposition to Defendant's Motion to Dismiss, or, in the Alternative, Transfer the Action ("Corcoran Decl."), ¶ 15; see also Declaration of Michael Little, dated September 9, 2005, previously submitted in opposition to Defendant's Motion to Dismiss, or, in the Alternative, Transfer the Action ("Little Decl."), ¶ 4.]

After preliminary discussions, MH and ICI entered into a Non-Disclosure Agreement,

2

dated November 1, 2004, in order to enable ICI to provide purportedly proprietary information for MH's evaluation of a possible transaction. [Little Decl., ¶ 5 and Exh. A.] By its terms, the Non-Disclosure Agreement established a two-year period during which its confidentiality terms remained in effect (through November 1, 2006). [Little Decl., ¶ 6 and Exh. A.] The Non-Disclosure Agreement set forth certain described limitations on the use by either MH or ICI of confidential, proprietary, or trade secret information disclosed by the other party during the exploration or due diligence period, and further provided that absent a transaction, any proprietary information provided by ICI to MH would be returned to ICI or certified as destroyed if ICI requested such action. [Little Decl., ¶ 6.]

### B.     The parties sign the Non-Binding Letter of Interest.

Ms. Kamys visited New Jersey in May 2005, at which time MH presented ICI with a proposed Non-Binding Letter of Interest which expressed MH's ". . . preliminary non-binding indication of interest in acquiring the web site development, management and hosting applications and services business . . . of Inherent.com, Inc. . . . and [its] proposed next steps to move this potential transaction forward." [Little Decl., ¶ 8 and Exh. B.]

From late May through mid-June 2005, ICI and MH continued to negotiate the terms of the Non-Binding Letter of Interest. [Little Decl., ¶ 9.] Among the modifications made at ICI's request was an amendment of the language to provide that the possible transaction was subject to (i) the parties reaching "mutually acceptable" purchase and sale contract terms and (ii) the execution of definitive transaction documents. [Little Decl., ¶ 9 and Exh. C at p. 3.]

The Non-Binding Letter of Interest was fully executed on June 17, 2005. [Little Decl., ¶ 9 and Exh. C.] The letter expressly provided that its execution did not obligate MH to complete any transaction with ICI. In that regard, the Non-Binding Letter of Interest proposed by MH to ICI provided that:

3

> . . . this letter and the acceptance thereof is non-binding and creates no legally binding obligation on the part of the parties to conclude the proposed transaction, and no legally binding obligation to conclude the proposed transaction will be created, notwithstanding any subsequent actions or communications, written or oral, between the parties, even though they may express or imply partial or preliminary agreement, except by the execution and delivery by all parties of definitive transaction documents.

[Little Decl., ¶ 11 and Exh. C at p. 5.] The fully executed Non-Binding Letter of Interest further stated that MH's interest in purchasing ICI was contingent on numerous specified "conditions precedent" to the completion of any transaction, including but not limited to (i) the satisfactory completion "of a full commercial, financial, technical and legal due diligence" by MH, (ii) the negotiation of acceptable purchase and sale contract terms acceptable to RE, and (iii) approval by the Board of Directors of RE. [Little Decl., ¶ 10 and Exh. C.]

ICI was well aware that the due diligence period following the execution of the Non-Binding Letter of Interest could result in the termination of discussions. In that regard, the Non-Binding Letter of Interest expressly provided that ICI would cease solicitation of other offers to dispose of ICI's business "until a transaction is consummated or terminated, or July 31, 2005, whichever first occurs." [Little Decl., Exh. C at pp. 4-5 (emphasis supplied).] The Non-Binding Letter of Interest also expressly stated that ICI was expected to continue all aspects of its business in the ordinary course. [Little Decl., Exh. C at p. 5.]

### C. MH informs ICI on June 28, 2005, that it does not wish to proceed with any transaction with ICI.

Following the execution of the Non-Binding Letter of Interest by ICI, MH undertook due diligence necessary to evaluate the feasibility and potential terms of a business transaction with ICI. [Little Decl., ¶ 13.] While performing due diligence, MH learned information that caused it to discontinue its consideration of any business transaction with ICI. [Little Decl., ¶ 14.] Among other reasons, MH terminated its interest in entering into a transaction with ICI because the due diligence review revealed (i) many problems with ICI's technology and database (its

4

principal asset was its computer code, which was found to be riddled with errors and no longer supported by the licensor of the technology), (ii) that ICI's finances were much weaker than expected, (iii) that ICI's customer base was less than what was represented, and (iv) that none of ICI's employees had non-compete agreements, and one of them -- the former chief technology representative -- had recently quit to establish a competitive venture. [Little Decl., ¶ 14.] Of course, MH did not need to provide any particular reason or objective justification in order to elect not to proceed with a transaction with ICI; nonetheless, these concerns were ample motivation for MH to determine that the transaction proposed by ICI was not advisable.

On June 28, 2005, less than two weeks after the Non-Binding Letter of Interest had been fully executed by the parties, MH's Chief Operating Officer advised ICI by telephone and in writing that MH had no interest in moving forward with any proposed transaction with ICI. [Little Decl., ¶ 16 and Exh. D.] Following MH's decision to terminate the discussions between the parties, MH voluntarily undertook to ensure that MH personnel performing the due diligence review were in compliance with the Non-Disclosure Agreement by either destroying or returning to MH's in-house counsel whatever confidential information they possessed. Further, MH's in-house counsel secured certifications from members of the MH due diligence team stating that they did not retain confidential information regarding ICI. [Little Decl., ¶ 17 and Exh. E.]

### D. ICI accuses MH of breaching the Non-Binding Letter of Interest, thereby prompting this litigation.

After MH terminated the discussions about a potential acquisition or other business arrangement, ICI had its attorney send a letter asserting that MH was obligated to purchase ICI for $780,000 pursuant to the Non-Biding Letter of Interest, and threatening legal action if MH did not do so. [See Counterclaim Exh. A.] In response, RE filed this action against ICI in the Superior Court of New Jersey (Docket No. UNN-L-2583 05), seeking a judgment declaring that

5

(i) MH did not breach any obligation to ICI in connection with the parties' discussions concerning a potential business transaction as contemplated in the Non-Binding Letter of Interest signed by the parties, and (ii) RE has no liability to ICI for terminating its preliminary interest in pursuing such transaction.

On August 16, 2005, ICI removed the case to the United States District Court for the District of New Jersey. On November 3, 2005, ICI filed its Answer and a Counterclaim seeking a declaratory judgment that MH breached the Non-Binding Letter of Interest by failing to purchase ICI. ICI also asserted claims against RE alleging interference with business advantage and fraud (relating to MH's due diligence review of ICI's business information).

## LEGAL ARGUMENT

### POINT I

**RE IS ENTITLED TO SUMMARY JUDGMENT DECLARING THAT THE NON-BINDING LETTER OF INTEREST DID NOT IMPOSE AN OBLIGATION ON MH TO PURCHASE ICI'S ASSETS**

On a motion for summary judgment, the trial judge must determine whether any material issues of fact are in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Federal Rule of Civil Procedure 56 permits a summary judgment motion to be made "at any time," not just after the close of discovery. See Fed. R. Civ. P. 56. "One of the primary purposes of Rule 56 is to allow the Court 'to isolate and dispose of factually unsupported claims or defenses.'" Cobb v. Philadelphia Gas Works, No. 04-2172, 2004 U.S. App. Lexis 26044, at *4 (3d Cir. Dec. 15, 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)). To that end,

> The purpose of our summary judgment rule is to expeditiously determine cases without necessity of formal trial where there is no substantial issue of fact. If no factual dispute exists and the complaint does not state a cause of action, it should be disposed of by summary judgment rather than exposing the litigants to unnecessary delay, work and expense in going to trial when the trial judge would be bound to direct a verdict in movant's favor after all the evidence is adduced.

6

Hubicki v. ACF Indus., 484 F.2d 519, 522 (3d Cir. 1973) (citation omitted).

ICI's assertion that a binding agreement was formed by the Non-Binding Letter of Interest is contrary to the clear and unambiguous language of the agreement itself. ICI seemingly contends that this "non-binding indication of interest" was somehow transformed into a binding contract for the purchase of ICI simply because it was executed. [Counterclaim ¶ 8 and Exh. A (referring to the execution of the Non-Binding Letter of Interest by an ICI shareholder as a removal of "contingencies")]. This interpretation cannot be supported by any reasonable reading of the Non-Binding Letter of Interest.

A court "can grant summary on an issue of contract interpretation if the contractual language being interpreted is subject to only one reasonable interpretation." Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 164-65 (3d Cir. 2001). "[W]here . . . a contract is unambiguous, it is appropriate for the court to determine its meaning as a matter of law at the summary judgment stage." LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1073 (3d Cir. 1996). Summary judgment should be denied only if a contract can reasonably be interpreted in two different ways. Am. Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, 581 (3d Cir. 1995). Here, the Non-Binding Letter of Interest can only be interpreted in one way -- that it created no binding obligation on MH to enter into any transaction with ICI -- and therefore summary judgment is appropriate.

When the terms of a contract are clear and unambiguous, its "meaning must be determined by its contents alone." Martin v. Monumental Life Ins Co., 240 F.3d 223, 233 (3d Cir. 2001). The terms of the Non-Binding Letter of Interest are clear and unambiguous and should be enforced as written. In determining the meaning of a contract, a court "cannot ignore the express language of the contract." SmithKline Beecham Corp. v. Rohm & Hass Co., 89 F.3d

7

154, 159 (3d Cir. 1996). From its very first words ("This letter provides our preliminary non-binding indication of interest in acquiring the web site development, management and hosting applications and services business of Inherent.com, Inc."), and continuing throughout the document, the Non-Binding Letter of Interest consistently indicates that it was not a binding agreement to purchase ICI's assets. [Little Decl., Exh. C at p. 1.] Indeed, the Non-Biding Letter of Interest specifically contemplates that the transaction may be either "consummated or terminated" under its provisions. [Little Decl., Exh. C at p. 5.] There is not one word anywhere in the Non-Binding Letter of Interest that supports ICI's assertion that MH was obligated to purchase ICI's assets.

For the Court to determine the contract claims asserted by the parties, it need go no further than to review the section of the Non-Binding Letter of Interest that is titled "Nature of this Letter." The language is explicit:

> [T]his letter and the acceptance thereof is non-binding and creates no legally binding obligation on the part of the parties to conclude the proposed transaction, and no legally binding obligation to conclude the proposed transaction will be created, notwithstanding any subsequent actions or communications, written or oral, between the parties, even though they may express or imply partial or preliminary agreement, except by the execution and delivery by all parties of definitive transaction documents.

[Little Decl., Exh. C at p. 5.] Beyond that provision, the Non-Binding Letter of Interest also contained various conditions precedent that had not been met and which therefore prevented the formation of any binding obligation upon MH. For example, the letter agreement provided that no purchase obligation would exist unless and until (i) MH was satisfied after its due diligence review (which it was not); (ii) the parties negotiated and executed formal transaction documents (which they did not); and (iii) the transaction was approved by the Board of Directors of RE (which it did not). [See Little Decl., ¶ 10 and Exh. C.] Accordingly, no reasonable argument can

8

be asserted to support the proposition that MH did not have the right to discontinue its interest in evaluating whether to purchase ICI's assets or otherwise engage in some sort of transaction with ICI.

This case is precisely the sort of unambiguous contract interpretation that is conducive to a resolution through summary judgment. See LeJeune, 85 F.3d at 1073. Because the provisions of the Non-Binding Letter of Interest are so clear, and patently impose no burden on MH to proceed with any transaction, RE is entitled to summary judgment in its favor on its declaratory judgment claim and ICI's reciprocal counterclaim and a finding that the Letter of Interest did not obligate MH to purchase ICI's assets.

## POINT II

### ICI'S CLAIMS THAT THE NON-BINDING LETTER OF INTEREST REQUIRED IT TO SUSPEND ITS SALES AND COLLECTION ACTIVITIES MUST BE DISMISSED BECAUSE THEY ARE CONTRARY TO THE EXPRESS TERMS OF THE CONTRACT

ICI asserts three separate claims, each of which incorrectly alleges that MH wrongfully caused ICI to suspend certain of its operations for a period of time.[1] [Counterclaim, ¶¶ 15-16 & 20-26 and Exh. A at 4.] On the contrary, MH, through the Non-Binding Letter of Interest, expressly permitted ICI to operate its business normally at all times. [Little Decl., Exh. C at pp. 4-5.] ICI's claims are based solely on an unreasonable and unsupported interpretation of a clear and unambiguous contract provision and therefore must be dismissed.

Although ICI's Counterclaims are vague as to how MH supposedly accomplished the feat of forcing ICI to suspend certain of its business operations, Exhibit A to ICI's Counterclaim

---

[1] The Second, Fourth, and Fifth Counterclaims are for breach of contract, intentional interference with prospective business advantage, and negligent interference with prospective business advantage, respectively. [Counterclaim, ¶¶ 15-16 & 20-26.]

9

clarifies the alleged basis for these allegations. That document, a letter from ICI's California counsel, states that the Non-Binding Letter of Interest "included a requirement that ICI not sell any products or services to 'lawyers, law firms or bar associations or others acting on behalf of those types of customers' for the duration of the Due Diligence period."[2] [Counterclaim Exh. A at 4.] This reading of the relevant provision is willfully misleading, and the quoted language from the Letter of Interest is grossly out of context. ICI's argument is also illogical in a business sense; a company interested in buying service-related assets would not want to disrupt the service and harm the client relationships of the company it is considering acquiring.[3]

The entire provision relied upon by ICI reads as follows:

> Agreement of [ICI] that, from the date of this letter through the due diligence process and negotiation of the definitive transaction documents and thereafter until a transaction is consummated or terminated, or July 31, 2005, whichever first occurs, [ICI] will cease all solicitation of other offers for the disposition by any means of the Business, the Company or any of its shares, substantial assets or rights, decline all unsolicited approaches seeking such transactions, and not provide confidential information concerning [ICI] or the Business to any third party **(except as necessary to conduct the Business in the ordinary course as heretofore conducted)**; provided, however that notwithstanding the foregoing, [ICI] may solicit offers for the sale of web site development, management and hosting contracts with customers of [ICI] that are not lawyers, law firms or bar associations or others acting on behalf of those types of customers.

[Little Decl., Exh. C at pp. 4-5.] (emphasis added). Clearly, the provision identified by ICI was meant to confirm that ICI could look for other buyers for the portion of its business relating to services to non-lawyers. In other words, MH had an exclusive right during the due diligence period to consider buying ICI's legal-related assets, but ICI

---

[2]  Although ICI maintains that its activities were restricted since May 25, 2005, and "for the duration of the Due Diligence period," the due diligence period actually begins on the date of the Non-Binding Letter of Interest and ends with the consummation or termination of the transaction. [Little Decl., Exh. C at p. 4.] The Non-Binding Letter of Interest is dated June 8, 2005, and the transaction was terminated on June 28, 2005, a period of 20 days.

[3]  Moreover, even assuming the parties agreed to such a restriction, they were free to voluntarily contract for it, the due diligence period was short (less than three weeks), and MH ended the due diligence period in accordance with the agreement and in a responsible fashion -- after which ICI would have been free to sell its assets or its services in the normal course.

10

could look to sell the rest of its non-legal business to other parties. This reading is entirely consistent with the opening paragraph of the Letter of Interest, which expressly states MH is not interested in ICI's non-legal business, and with the definition of "Business" used throughout the document.

Moreover, the Non-Binding Letter of Interest, in the very next paragraph, reiterated that ICI was to conduct its business normally during the due diligence review:

> [F]rom the date of this proposal through the due diligence process and negotiation of the definitive transaction documents and thereafter until the transaction is consummated or terminated, **[ICI] shall carry on the Business in the ordinary course** and shall notify [MH] of any extraordinary transactions or occurrences in respect of the Business.

[Little Decl., Exh. C at p. 5.] (emphasis added). This provision leaves no doubt that ICI was able to -- and indeed expected to -- carry on with its business in normal fashion and was not to refrain from making sales or otherwise generating revenue.

The meaning of the Non-Binding Letter of Interest, like all unambiguous contracts, "must be determined by its contents alone." Martin, 240 F.3d at 233. Summary judgment is proper in cases governed by clear and unambiguous contracts. Emerson Radio, 253 F.3d at 164-65; LeJeune, 85 F.3d at 1073. Summary judgment on ICI's claims is proper because ICI's interpretation of the contract is patently unreasonable. Far from requiring ICI to halt sales and collections, the clear language of the Non-Binding Letter of Interest expressly authorized ICI to carry on all routine business operations (which would include sales and collections). The only impact of the Non-Binding Letter of Interest on ICI's business management was that ICI was not supposed to engage in discussions with other potential suitors for its legal related assets until MH had concluded its due diligence and either consummated a transaction or terminated its interest in ICI.

11

The only relevant issue here is one of contract interpretation. There are no disputed issues of material fact to be determined by a factfinder. It is irrelevant whether ICI did in fact suspended aspects of its operations. See Silver v. Am. Institute of Certified Public Accountants, Civil Action No. 01-4910 (JWB), 2005 U.S. Dist. Lexis 18108, at *3 (D.N.J. Aug. 15, 2005) ("A fact is 'material' only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is 'genuine' if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party."). Even if ICI stopped selling its products and collecting receivables for the brief two-week period between execution of the parties' agreement and MH's termination of its interest in pursuing a transaction, it did so at its own option and not because of any provisions of the Non-Binding Letter of Interest. MH would have had no input or involvement in that decision and could not, as a matter of law, be held liable for it. This fact, therefore is not material and is insufficient to defeat summary judgment.

## POINT III

### ICI'S FRAUD CLAIM SHOULD BE DISMISSED BECAUSE ICI HAS FAILED TO PLEAD FRAUD WITH SUFFICIENT PARTICULARITY AND BECAUSE THERE IS NO GOOD FAITH BASIS FOR THE ALLEGATIONS ASSERTED

A. **ICI's conclusory allegations of fraud are insufficient to meet the pleading requirement of Fed. R. Civ. P. 9(b) and should be dismissed.**

ICI's fraud allegation reads as follows:

[ICI is] informed and believe[s] that [RE] entered into the contract in bad faith for the purpose of finding out [ICI]'s trade secrets. This allowed [RE] to utilize this trade secret information to obtain an unfair competitive advantage in their own competing business of creating web sites for law firms throughout the United States. [RE] never intended to purchase Inherent, Inc., but only had the intent to obtain the trade secrets of [ICI], and utilize those secrets in its own business.

Counterclaim ¶ 18.

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of Rule 9(b) is to "place the defendant on notice of the precise misconduct with which they are charged and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir.), cert. denied, 543 U.S. 918 (2004) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984), cert. denied, 469 U.S. 1211 (1985)); see also Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (observing that one purpose of Rule 9(b) is "to prevent false or unsubstantiated charges"). Thus, the policy behind Rule 9(b) is to protect a party such as RE from precisely the sort of unsupported and baseless fraud claim as has been asserted by ICI.

The requirements for particularity may be satisfied either by pleading such details as the date, place, and time of the alleged fraud or through "the alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud." Lum, 361 F.3d at 224 (citation omitted). Allegations pled on information and belief, such as ICI's, generally will fail to satisfy Rule 9(b). Zavala v. Wal-Mart, 393 F. Supp. 2d 295, 314 (D.N.J. 2005). Where such allegations are relied upon, the Complaint must at least set forth "the nature and scope of plaintiff's efforts to obtain, before filing the complaint, the information needed to plead with particularity." Id. (citation omitted). ICI's complaint contains no such representation and no factual basis for the allegations.

To be sufficient, fraud claims must be accompanied by facts upon which their allegations are based. Id. As one court recently noted as it dismissed a fraud claim, "[t]he Court will not allow Plaintiff the opportunity to conduct discovery on this claim in the hopes that it may uncover something probative. Rule 9(b) requires that at least some of those facts be pleaded

13

now." NN&R, Inc. v. One Beacon Ins. Group, 362 F. Supp. 2d 514, 520 (D.N.J. 2005). Here, ICI asserts absolutely no facts to support its claim. ICI does not identify any fraudulent act or misrepresentation committed by RE. ICI does not allege that RE has used its information in any impermissible way, nor does it even allege that RE has access to ICI's information. Instead, ICI opts to rest entirely on conclusory allegations based solely on information and belief. Accordingly, the fraud claim should be dismissed.

### B. The fraud claim should be dismissed because it lacks a good faith basis.

ICI's fraud claim is based purely on speculation and fantasy, and should be dismissed since it is not supported by any good faith factual basis. See De Bruno v. Sotheby Parke Bernet, Inc., Civil Action No. 84-3021, 1984 U.S. Dist. Lexis 24919 (D.N.J. Nov. 8, 1994) (granting summary judgment because the causes of action lacked a good faith basis in fact or law). ICI claims that MH entered into the Non-Binding Letter of Interest in order to obtain access to ICI's proprietary information to be used for its own advantage. [Counterclaim ¶ 18.] To the contrary, MH has not used ICI's information and indeed ensured that its personnel conducting the due diligence either destroyed all information gathered from ICI or returned it to MH's in-house counsel. ICI has no reason to believe otherwise, and ICI has not alleged (and cannot allege) that MH breached the Non-Disclosure Agreement.

In entering into the Non-Binding Letter of Interest and the Non-Disclosure Agreement, the parties specifically contemplated the protection to be accorded to information about ICI's business that would be made available to MH. The Non-Disclosure Agreement limits MH's use of the information "to explore a potential business relationship" and protects it from disclosure to third parties for a period of two years. [Little Decl., Exh. A.] The Non-Disclosure Agreement also requires that MH, upon written request from ICI, "shall return proprietary information to

14

[ICI] or destroy it and certify its destruction." [Little Decl., Exh. A.] MH has fully complied with those obligations (even though not requested to do so by ICI).

On June 29, 2005, one day after informing ICI that it was no longer interested in pursuing the acquisition, MH issued a memo to each member of MH's due diligence team directing them to turn in all original files provided by ICI and to destroy all copies of ICI's information. [Little Decl. ¶ 17 and Exh. E.] The memo further required the members of the due diligence team to certify that they have complied. [Little Decl. ¶ 17 and Exh. E.] Because MH fully complied with its obligations under the Non-Disclosure Agreement, it does not possess any of ICI's proprietary information and therefore has not used or disclosed it. Furthermore, ICI has no reasonable grounds on which to assert otherwise. This fraud claim lacks any good faith factual basis and should be dismissed.

## CONCLUSION

For all the foregoing reasons, it is respectfully submitted that RE's motion for summary judgment should be granted, a declaratory judgment in favor of RE should be issued, and ICI's Counterclaims should be dismissed.

SILLS CUMMIS EPSTEIN & GROSS P.C.<br>
One Riverfront Plaza<br>
Newark, New Jersey 07102<br>
(973) 643-7000<br>
Attorneys for Plaintiff Reed Elsevier<br>
<br>
By:   /s/ Mark E. Duckstein<br>
      MARK E. DUCKSTEIN

Dated: April 13, 2006