NOT FOR PUBLICATION                                    **CLOSED**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| REED ELSEVIER, INC.,          : | |
| : | |
| Plaintiff,          : | |
| : | Civil Action No.: 05-4048 (JLL) |
| v.          : | |
| : | **O P I N I O N** |
| INHERENT.COM, INC.,          : | |
| : | |
| Defendant.          : | |
| : | |

**LINARES,** District Judge.

This matter comes before the Court on Plaintiff Reed Elsevier, Inc.'s ("Reed Elsevier" or

"Plaintiff") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and

Plaintiff's partial motion to dismiss[1] Defendant Inherent.com, Inc. a/k/a Inherent, Inc.'s

("Inherent" or "Defendant") Counterclaim pursuant to Federal Rule of Civil Procedure 9(b).  No

oral argument was heard.  Fed. R. Civ. P. 78.  For the reasons set forth herein, Plaintiff's motion

for summary judgment is granted and its partial motion to dismiss is granted.

## BACKGROUND

**A.      Procedural History**

It is first necessary to set forth this matter's pertinent procedural history since it impacts

the Court's analysis of Plaintiff's motion for summary judgment.

_____

[1]This terminology will be explained by the Court herein, in Section B(2)(b) of the
Discussion.

1

Plaintiff filed its Complaint for declaratory judgment on July 18, 2005 in the Superior Court of New Jersey, Law Division, Union County, New Jersey (the "Complaint"). Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441(b) on August 15, 2005 based upon diversity of citizenship between the parties. The Complaint requests the Court to construe the terms of a certain agreement between the parties to constitute a binding contractual agreement and to issue a judgment declaring that: "(i) Martindale-Hubbell did not breach any obligation to [Defendant] in connection with the parties' discussions concerning a potential business transaction as contemplated in the Letter of Intent signed by the parties; and (ii) Reed Elsevier has no liability to [Defendant] for terminating its preliminary interest in pursuing such a transaction." (Compl. ¶ 21). Plaintiff also seeks an award of the costs of suit from Defendant. (Id.).

On November 3, 2005 Defendant filed an Answer and a Counterclaim (the "Counterclaim"). The Counterclaim sets forth five claims against Reed Elsevier, including claims for: 1) declaratory relief; 2) breach of contract; 3) common law fraud; 4) intentional interference with prospective business advantage; and 5) negligent interference with prospective business advantage. (Counterclaim ¶¶ 13-26).

Plaintiff filed a motion for summary judgment on April 13, 2006 on the claims in its Complaint as well as Defendant's entire Counterclaim. The Clerk's Office assigned a return date to the motion of May 8, 2006. (See CM/ECF Entry 4/13/06). Accordingly, Defendant's opposition was due to the Court on or before April 24, 2006, with any reply thereto due by May 1, 2006. No timely opposition was received by the Court and by Order dated May 3, 2006, the Court adjourned the due date for opposition until May 5, 2006, with the consent of Plaintiff. On

2

May 5, 2006 Defendant filed a certification of one Debra Kamys without any formal brief nor a requisite Local Civil Rule 56.1 Statement of Facts. (See CM/ECF Entry #20).  Local Civil Rule 56.1 requires each side to a motion for summary judgment to "furnish a statement of material facts as to which there exists or does not exist a genuine issue."  L. Civ. R. 56.1.

As a courtesy, the Court contacted counsel for Defendant and informed counsel that pursuant to Local Civil Rule 56.1, a statement of material facts must be submitted to the Court, and set a due date for same on May 23, 2006.  On May 25, 2006, Defendant, having failed to submit the required statement of facts, filed an opposition brief without leave of this Court.  By Order dated June 5, 2006, this Court struck Defendant's untimely opposition brief, and required Defendant to submit the required statement of facts on or before June 12, 2006.  (CM/ECF Entry #23).  The Court informed Defendant that failure to do as requested would result in Plaintiff's motion for summary judgment being granted.  (Id.).  Defendant untimely filed the required statement of facts on June 16, 2006.  (CM/ECF Entry #24).  Same was dated and signed by Defendant's counsel on June 15, 2006.  (Id.).  Defendant's Statement of Facts contains only one citation to the record and does not correspond to Plaintiff's similar statement.

## B.    Factual Background

The Court shall draw the facts from the parties' relevant statements of material facts.  All facts herein are undisputed unless otherwise noted.  The Court notes that "facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted," Hill v. Algor, 85 F.Supp.2d 391, 408 n. 26 (D.N.J. 2000), unless same are controverted in the briefs or contradicted by relevant evidence.  Maertin v. Armstrong World Indus., 2000 Westlaw 554168, *1 n. 1 (D.N.J. May 3, 2000).

3

Plaintiff is a Massachusetts corporation and has its principal place of business in Newton, Massachusetts. Martindale-Hubbell ("MH") is a division of Plaintiff with its principal place of business in New Providence, New Jersey. MH is in the business of providing various products and services utilized by the legal profession. The parties dispute where Defendant's principal place of business is located. (Compl. ¶ 2, Answer ¶ 2). However, it is undisputed that Defendant is in the business of providing internet-related services for professional organizations, primarily law firms and legal professional associations. (Id.).

In 2004, MH and Defendant commenced discussions regarding the possibility of the two companies entering a business relationship. (Compl. ¶ 3, Answer ¶ 3). These discussions continued from November 2004 through May 2005. (Pl. Stmt. Facts ¶ 1). The parties executed a confidentiality agreement which became effective on November 1, 2004. (Compl. ¶ 4, Answer ¶ 4). The confidentiality agreement[2] provided certain limitations on the use by either party of confidential, proprietary, or trade secret information which might be disclosed during the course of the parties' discussions. (Compl. ¶ 5, Answer ¶ 5). The confidentiality agreement provided for the return or destruction of all proprietary information upon written request of either party. (Id.).

On June 17, 2005, the parties executed a letter agreement[3] (the "Letter Agreement")

---

[2]Plaintiff refers to this agreement as the "Non-Disclosure Agreement." (Compl. ¶ 4). However, in the Answer, Defendant contests this terminology. (Answer ¶ 4). Accordingly, the Court will refer to it in general terms, since the parties do not dispute the agreement's terms and effects.

[3]Although the parties dispute whether the Agreement was a "letter of intent" or a "letter of interest," the Court finds that this is a distinction without a difference for the purpose of the instant analysis. Accordingly, the Court will refer to the agreement executed on June 17, 2005 as the "Letter Agreement."

which provided MH's "preliminary non-binding indication of interest in acquiring the web site

development, management and hosting applications and services business of [Defendant] . . . ."

(Letter Agreement at 1; Little Decl. Ex. C).  The Letter Agreement set forth the terms of a

potential purchase of Defendant, which was explicitly subject to stated "conditions precedent."

(Id. at 3).  Such conditions precedent included inter alia: completion of due diligence

investigations by LexisNexis of the state of the Defendant's business and MH's satisfaction

therewith, mutually acceptable purchase and sale terms, approval by Plaintiff's Board of

Directors, and Defendant having "engaged in no material transactions since December 31, 2004."

(Id.).  The Letter Agreement concluded by explicitly stating that with exceptions not relevant

here:

> this letter and the acceptance thereof is non-binding and creates no
> legally binding obligation on the part of the parties to conclude the
> proposed transaction, and no legally binding obligation to conclude
> the proposed transaction will be created, notwithstanding any
> subsequent actions or communications, written or oral, between the
> parties, even though they may express or imply partial or
> preliminary agreement, except by the execution and delivery by all
> parties of definitive transaction documents.

(Id. at 5).

Pursuant to the Letter Agreement, from the due diligence period until the ultimate

consummation or termination of the transaction, Defendant was to "carry on the Business in the

ordinary course and [should] notify LexisNexis of any extraordinary transactions or occurrences

in respect of the Business."  (Id.).  The Letter Agreement also required Defendant and certain of

its owners to "cease all solicitation of other offers for the disposition by any means of the

5

Business, the Company or any of its shares, substantial asserts or rights, decline all unsolicited approaches seeking such transactions, and not provide confidential information concerning the Company or the Business to any third party (except as necessary to conduct the Business in the ordinary course as heretofore conducted).  (<u>Id.</u>).

MH undertook the due diligence review set forth in the Letter Agreement.  (Pl. Stmt. Facts ¶ 10).  After receiving information from Defendant about its operations, MH advised Defendant on June 28, 2005 that it no longer had any interest in moving forward with the proposed transaction.  (<u>Id.</u>  ¶¶ 10-11).  Following its decision to terminate the purchase discussions with Defendant, MH "gathered and/or destroyed all confidential information provided to MH by [Defendant] during the due diligence review."  (<u>Id.</u> ¶ 15).  Pursuant to the terms of the parties' confidentiality agreement, "MH provided certifications to [Defendant] stating that the signatories, who were involved in the due diligence process, no longer possessed confidential information regarding [Defendant]."  (<u>Id.</u> ¶ 16).

On July 13, 2005, counsel for Defendant faxed a letter to the Deputy General Counsel of LexisNexis that stated that Defendant believed that MH had breached the Letter Agreement and threatened to file a lawsuit should a settlement not be reached within five days of the date of the letter.  (Letter 7/13/05, Ex. A to Counterclaim).  Accordingly, Plaintiff filed its Complaint in this Court requesting that the Court construe the terms of the Letter Agreement to constitute a binding contractual agreement and issue a judgment declaring that: "(i) Martindale-Hubbell did not breach any obligation to [Defendant] in connection with the parties' discussions concerning a potential business transaction as contemplated in the Letter of Intent signed by the parties; and (ii) Reed Elsevier has no liability to [Defendant] for terminating its preliminary interest in

pursuing such a transaction." (Compl. ¶ 21).  Plaintiff also seeks an award of the costs of suit from Defendant.  (Id.).

## DISCUSSION

### A.    Legal Standard for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment may be granted when, drawing all inferences of the non-moving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987), cert. dismissed, 483 U.S. 1052 (1987).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, for which that party will bear the burden at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.  Id.  Once that burden has been met, the non-moving party must set forth "specific facts showing there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts."  Id. at 586.

### B.    Discussion

#### 1.    Breach of Contract

In order to sustain a claim for breach of contract under New Jersey law,[4] a plaintiff must

---

[4]  Since this Court presently exercises its diversity jurisdiction over the Complaint, the law to be applied is that of the forum state – New Jersey.  American Cyanamid Co. v. Fermenta Animal Health, 54 F.3d 177, 180 (3d Cir. 1995).  Additionally, the Letter Agreement does not

show: (1) the existence of a contract; (2) a breach of that contract; (3) damages flowing

therefrom; and (4) that Plaintiff had performed its own contractual duties.  Farash & Robbins Inc.

v. Fleet Nat. Bank, 2005 WL 3465659, *3 (D.N.J. 2005) (citing Video Pipeline, Inc. v. Buena

Vista Home Entertainment, Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003)).

    Plaintiff argues that MH did not breach any obligation to Defendant and accordingly, MH

has no liability to Defendant for its discontinuation of interest in the purchase of Defendant.

(Compl. ¶ 21).  Defendant argues that MH's non-performance under the Letter Agreement

constituted a breach of same, and damaged Defendant because MH allegedly "demanded that

[Defendant] suspend all sales efforts and the billing of existing clients in anticipation" of the

purchase.  (Counterclaim ¶¶ 14-16).  The first two counts of Defendant's Counterclaim mirror

Plaintiff's request for declaratory judgment, and thus the Court will jointly analyze these claims.

    The parties do not dispute that the Letter Agreement constituted a binding contract.  (See

Counterclaim ¶ 9).  However, the parties do dispute whether MH breached the Letter Agreement

when it declined to consummate the purchase of Defendant.  Defendant argues that MH breached

the Letter Agreement by its failure to fulfill "its duties under the contract between the parties."

(Counterclaim ¶ 16).  Defendant argues that MH "clearly committed to purchasing [Defendant],"

(Kamys Cert. ¶ 4), and that by failing to finalize such purchase, MH breached the Letter

Agreement.

    It is hornbook law that if the relevant terms in a contract are ambiguous, the issue must go

_____

specifically state what state's laws will govern the Letter Agreement, nor do the parties raise this
issue in their submissions to the Court.  Further, the confidentiality agreement specifically stated
that same would be governed by New Jersey law, MH has its principal place of business in New
Jersey and it appears that the due diligence review was conducted in New Jersey.  Accordingly,
the Court will apply New Jersey law to the claims of Plaintiff and Defendant.

to a jury.  See, e.g., Sanford Inv. Co., Inc. v. Ahlstrom Mach. Holdings, Inc., 198 F.3d 415, 421 (3d Cir.1999).  A court can grant summary judgment on an issue of contract interpretation if the contractual language being interpreted is subject to only one reasonable interpretation.  Arnold Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999); Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 164-65 (3d Cir. 2001).  Conversely, an agreement is ambiguous if it is "susceptible of more than one meaning."  Sumitomo Mach. Corp. of Am., Inc. v. AlliedSignal, Inc., 81 F.3d 328, 332 (3d Cir.1996).  If the contract is unambiguous, "it is appropriate for the court to determine its meaning as a matter of law at the summary judgment stage."  Dunkin Donuts Inc. v. Patel, 174 F.Supp.2d 202, 210 (D.N.J. 2001) (quoting Legeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1073 (3d Cir. 1996)).  Courts have often said that before deciding whether a contract is ambiguous, consideration must be given to the "contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation." American Cyanamid Co., 54 F.3d at 180-81.  If a contract can reasonably be interpreted in two different ways, then a "contracting party is not entitled to summary judgment in breach of contract action." Dunkin Donuts, 174 F.Supp.2d at 210 (quoting American Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, 581 (3d Cir. 1995)).

Here, the Court finds that the language of the Letter Agreement which permits MH to terminate the Letter Agreement is subject to only one reasonable interpretation.  As noted supra, Defendant has not proffered a reasonable alternative to this interpretation, and accordingly, Plaintiff is entitled to summary judgment on its claim for declaratory relief.  See Dunkin Donuts, 174 F.Supp.2d at 210.  The final portion of the Letter Agreement explicitly states that, with certain exceptions not applicable to the present discussion:

9

>this letter and the acceptance thereof is non-binding and creates *no*
>*legally binding obligation on the part of the parties to conclude the*
>*proposed transaction*, and no legally binding obligation to
>conclude the proposed transaction will be created, notwithstanding
>any subsequent actions or communications, written or oral,
>between the parties, even though they may express or imply partial
>or preliminary agreement, *except by the execution and delivery by*
>*all parties of definitive transaction documents*.

(Letter Agreement at 5, Little Decl. Ex. C) (emphasis added).  Thus, MH's decision to terminate
the Letter Agreement following due diligence results which it found unsatisfactory was within
the terms of the Letter Agreement and did not constitute a breach.  In fact, by its terms, the Letter
Agreement states that "[a]ny transaction based upon this indication of interest will be subject to .
. . conditions precedent."  (Id. at 3).  Among the enumerated conditions precedent was the
condition that LexisNexis be satisfied with the results of its due diligence examination of
Defendant.  (Id.).  Thus, MH's stated dissatisfaction with its due diligence investigation and
resultant decision to terminate the Letter Agreement fall squarely within the terms of the Letter
Agreement.

The Court has reviewed the Certification of Inherent executive Debra Kamys[5] submitted
in opposition to summary judgment, the Defendant's Statement of Material Facts (which contains
only one citation to the record), and Defendant's impermissible opposition brief, and concludes

---

[5]Plaintiff objects to the Court's consideration of the Kamys Certification on the basis that
same does not conform to the requirements of 28 U.S.C. § 1746.  This statute requires the
certifying person to certify that the foregoing was made "under penalty of perjury."  28 U.S.C. §
1746(2).  The Kamys Certification does not include this language.  However, Ms. Kamys does
certify "that the foregoing statements made by me are true and correct to the best of my
knowledge.  I am aware that if any of the foregoing statements are willfully false, I am subject to
punishment."  (Kamys Certif. ¶ 11).  The Court is satisfied that this language effectuates the
intent and purpose contemplated by 28 U.S.C. § 1746, and accordingly, the Court will consider
the Kamys Certification.

that Defendant has failed to raise one genuine issue of fact sufficient to defeat Plaintiff's motion for summary judgment.  Defendant argues that prior to the execution of the Letter Agreement, the parties verbally removed the conditions precedent.  (Counterclaim ¶ 8).  However, Defendant's only support for this assertion is a letter written by its own counsel.   Further, this assertion is wholly contradicted by the written terms of the Letter Agreement.

This Court determines that as a matter of law, Defendant has failed to raise any genuine issue of material fact related to whether MH breached the Letter Agreement.  Since Defendant has failed to establish the second element of the prima facie claim for breach of contract, Plaintiff's request for a declaratory judgment on this issue is granted and Defendant's First and Second Counterclaims for declaratory relief and breach of contract, respectively, are dismissed with prejudice.

**2.      Remaining Counterclaims**

Plaintiff moves for summary judgment on the Third, Fourth and Fifth Counterclaims. These claims allege fraud, intentional interference with prospective business advantage, and negligent interference with prospective business advantage.

a.      *Interference with Prospective Business Advantage*

Inherent's claim for intentional interference with prospective business advantage incorporates the preceding allegations of the Counterclaim and alleges further that Inherent suffered damages "in the hundreds of thousands of dollars" as a result of Reed Elsevier's allegedly prohibiting Inherent from making sales and collecting money from existing clients. (Counterclaim ¶¶ 22-23).  Inherent alleges that Reed Elsevier intentionally acted to impair Inherent's business.  (Id. ¶ 21).  Inherent also sets forth a claim for negligent interference with

11

prospective business advantage.  That claim too, incorporates the preceding allegations of the

Counterclaim.  Inherent alleges that Reed Elsevier "acted recklessly and/or negligently by

causing Plaintiff to refrain from its ordinary business relations during its discussions with

[Inherent] to acquire the business."  (Counterclaim ¶ 26).

> To state a successful claim for tortious interference, a plaintiff must demonstrate:

> > (1) the existence of a protectable economic or contractual right; (2)
> > malicious intent to interfere with such relations; (3) that the
> > defendant's interference caused the loss of prospective gain; (4)
> > that such a loss was the proximate cause of injuries.

Braunstein v. Benjamin Berman, Inc., Civil Action No. 89-5344, 1990 Westlaw 192547, *23

(D.N.J. Sept. 14, 1990) (citing Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739,

751-52, 563 A.2d 31 (1989)).  New Jersey has adopted the definition of tortious interference with

an existing contract from Section 766 of the Restatement (Second) of Torts,  Matrix Essentials,

Inc. v. Cosmetic Gallery, Inc., 870 F. Supp. 1237, 1247 (D.N.J. 1994), aff'd, 85 F.3d 612 (3d Cir.

1996), which provides:

> > One who intentionally and improperly interferes with the
> > performance of a contract (except a contract to marry) between
> > another and a third person by inducing or otherwise causing the
> > third person not to perform the contract, is subject to liability to the
> > other for the pecuniary loss resulting to the other from the failure
> > of the third person to perform the contract.

Restatement (Second) of Torts § 766 (1979).

> New Jersey also recognizes a tort for negligent interference with prospective advantage.

See People Express Airlines Inc. v. Consol. Rail Corp., 100 N.J. 246 (1985) (holding that purely

economic loss caused by negligence is compensable in tort).  The People Express Court held

that:

> a defendant owes a duty of care to take reasonable measures to
> avoid the risk of causing economic damages, aside from physical
> injury, to particular plaintiffs or plaintiffs comprising an
> identifiable class with respect to whom defendant knows or has
> reason to know are likely to suffer such damages from its conduct.
> A defendant failing to adhere to this duty of care may be found
> liable for such economic damages proximately caused by its breach
> of duty.

Id. at 263.

Reed Elsevier moves for summary judgment on these claims on the basis that they are based on an incorrect and unsupported reading of the Letter Agreement.  (Pl. Br. at 9).  Reed Elsevier argues that the terms of the Letter Agreement are unambiguous and fail to lend support to Inherent's allegation that Reed Elsevier interfered with Inherent's existing business relationships.  (Id.).  Reed Elsevier points the Court to the express language of the Letter Agreement which by its terms *instructs* Inherent to "carry on the Business in the ordinary course" from the date of the Letter Agreement through the due diligence process, up until consummation or termination of the Letter Agreement.  (Letter Agreement at 5; Little Decl., Ex. C).  As Reed Elsevier notes, Inherent fails to raise any issue of material fact with respect to whether Plaintiff allegedly required Inherent to suspend its business practices.  (Pl. Br. Reply at 6).  Nor does Defendant argue that the Letter Agreement was ambiguous.  Accordingly, it is appropriate for the Court to determine the meaning of the Letter Agreement during the summary judgment stage as a matter of law.  Dunkin Donuts, 174 F. Supp. 2d 202, 210 (D.N.J. 2001).

As discussed above, the Letter Agreement, by its terms, does not require Inherent to suspend its business.  However, assuming arguendo, that the Letter Agreement placed such

13

requirements upon Inherent, Inherent itself explicitly states that its concern with possibly

decreased profits during the due diligence process caused the companies to negotiate a payment

plan more favorable to Defendant.  (See Kamys Certif. ¶¶ 7-8).  Kamys expressly avers that

"Inherent entered into [the Letter Agreement] with [MH]" based upon MH's alleged

representations that it would pay Inherent in two, rather than three installments.  (Id. ¶ 8).  Thus,

the restrictions on Defendant's business set forth in the Letter Agreement appear to have been

specifically negotiated into the Letter Agreement in exchange for a payment plan more favorable

to Inherent.  As a matter of logic, it appears impossible for a claim based upon interference with

prospective business advantage to lie where such alleged "interference" was expressly contracted

for by the complaining party.  Accordingly, for the reasons herein, Plaintiff's motion for

summary judgment on Counts Four and Five of the Counterclaim is granted and such claims are

dismissed with prejudice.

> 2.   *Fraud*

Lastly, Inherent alleges a claim for fraud.  This claim incorporates the preceding

allegations of the Counterclaim, but is set forth in its entirety as follows:

> Plaintiffs are informed and believe that Defendant entered into the
> contract in bad faith for the purpose of finding out Plaintiff's trade
> secrets.  This allowed Defendants to utilize this trade secret
> information to obtain an unfair competitive advantage in their own
> competing business of creating web sites for law firms throughout
> the United States.  Defendant's [sic] never intended to purchase
> Inherent, Inc. but only had the intent to obtain the trade secrets of
> Plaintiff, and utilize those secrets in its own business . . . As the
> proximate result of the aforementioned actions of Defendants,
> Plaintiff suffered damages.

(Counterclaim ¶¶ 18-19).  Although Plaintiff's Notice of Motion states that it moves for

14

summary judgment on this claim, its moving and reply briefs focus almost exclusively on the requirements of Federal Rule of Civil Procedure 9(b) which requires fraud claims to be plead with particularity.  Despite labeling the instant argument as one within the context of a motion for summary judgment, a Rule 9(b) analysis is generally conducted within the context of a motion to dismiss.  Accordingly, the Court will treat this portion of Plaintiff's motion as one to dismiss Defendant's fraud counterclaim pursuant to Federal Rule of Civil Procedure 9(b).

Where a plaintiff asserts a claim based on allegations of fraud, Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  The rule applies even to a fraud claim based on state law. Craftmatic Sec Litig. v. Kraftsow, 890 F.2d 628, 645 n. 28 (3d Cir. 1989) (citing Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 99 (3d Cir. 1983).  Rule 9(b) requires greater particularity than mere notice pleading.  See Fed. R. Civ. P. 9(b); but cf. Fed. R. Civ. P. 8(a)(2). The particularity requirement of Rule 9(b) serves to place defendants on notice of the precise misconduct alleged and to "safeguard defendants against spurious charges of immoral and fraudulent behavior."  Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1986).  However, the Third Circuit has warned district courts not to overly focus on the "particularity" language in Rule 9(b) and has held that a fraud plaintiff need not allege "date, place or time" to fulfill the requirements of the Rule.  Seville, 742 F.2d at 791.  Rather, it is sufficient for a fraud plaintiff to "use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  Id.  But, a plaintiff "must allege who made a misrepresentation to whom and the general content of the misrepresentation."  Lum v. Bank of America, 360 F.3d 217, 223-24 (3d Cir. 2004) (citing Saporito v. Combustion Eng'g Co., 843

15

F.2d 666, 675 (3d Cir. 1988), vacated on other grounds, 489 U.S. 1049 (1989)).

Here, as Plaintiff argues, Defendant has failed, in every way, to meet the requirements of Rule 9(b).  The allegations in Inherent's fraud claim are exceptionally vague, and do nothing more than make generalized allegations based on suspicion.  (Counterclaim ¶ 18).  Defendant does not point to any specific action or inaction of Reed Elsevier which would place Reed Elsevier on notice of the precise misconduct alleged.  See Seville Indus., 742 F.2d at 791. Defendant alleges that Reed Elsevier entered the Letter Agreement only to gain Inherent's trade secrets and is in fact "utiliz[ing] this trade secret information to obtain an unfair competitive advantage."  (Counterclaim ¶ 18).  However, Defendant fails to substantiate such an allegation with support such as financial documents from Plaintiff or Defendant, news articles from the industry, or other means of "injecting precision and some measure of substantiation into their allegations of fraud."  Seville Indus., 742 F.2d at 791.  Further, Inherent fails to identify exactly what misrepresentation was allegedly made and to whom.  Lum, 360 F.3d at 223-24.

For the reasons stated herein, the Court will grant Plaintiff's motion to dismiss Defendant's claim of fraud.  However, such dismissal is without prejudice, and the Court hereby exercises its discretion and grants Inherent twenty (20) days from the date of this Opinion and accompanying Order to amend this claim to meet the requirements of Rule 9(b).  See Fed. R. Civ. P. 15(a).  The Court instructs Inherent that it must amend only this claim, and may only provide further related details, not broaden the scope of the conduct complained of.  Failure to amend this claim shall result in dismissal of the claim with prejudice.  See In re Westinghouse Sec. Litig., 90 F.3d 696, 703-04 (3d Cir. 1996) (holding that district court did not abuse its discretion when it dismissed certain claims with prejudice following plaintiff's decision not to

16

amend).

### 3.    Declaration of Non-Liability

The latter part of Plaintiff's request for declaratory relief requests this Court to declare

that "Reed Elsevier has no liability to [Inherent] for terminating its preliminary interest in

pursuing such a transaction." (Compl. ¶ 21).

The Uniform Declaratory Judgments Act (the "UDJA"), passed in 1924, permits a party

to a written contract to have determined "any question of construction or validity arising under

the . . . contract . . . and obtained a declaration of rights, status or other legal relations there

under." N.J.S.A. § 2A:16-53. The New Jersey Supreme Court has noted that the UDJA is

intended to be liberally construed and administered so that it reaches its intended purpose. Bell

v. Stafford Twp., 110 N.J. 384, 390 (1988) (citations omitted). Courts and parties should not

utilize the UDJA to issue opinions which are merely advisory. Id. at 391 (citation omitted).

Rather, the UDJA should be utilized to "afford expeditious relief from uncertainty with respect to

rights when claims are in genuine conflict." Id. (citing Hartford Acc. & Indem. Co. v. Selected

Risks Indem. Co., 65 N.J.Super. 328 (App.Div.1961)).

Here, the Court finds that Plaintiff's request for relief declaring that Plaintiff has "no

liability" for terminating the Letter Agreement is an improper use of this Court's power under the

UDJA. The Court has already determined supra that Plaintiff has not breached the Letter

Agreement, and has granted summary judgment to Plaintiff on the First, Second, Fourth and Fifth

Counterclaims. Further, the Court has dismissed the Third Counterclaim for failure to comply

with the requirements of Federal Rule of Civil Procedure 9(b). It does not appear that any rights

or claims are presently "in genuine conflict" due to the Court's previous rulings. Bell, 110 N.J.

at 391.  Accordingly, the Court determines that it is improper to issue the broad declaratory relief requested by Plaintiff.  Further, since the Court has granted Defendant leave to amend its fraud claim, any declaration that Plaintiff has "no liability" would contradict this decision.  Accordingly, Plaintiff's motion for summary judgment with respect to its request for declaratory relief in subpart (ii) of Paragraph 21 of the Complaint is denied.

**4.     Costs of Suit**

Plaintiff's Complaint seeks an award of the "costs of suit."  (Compl. ¶ 21).  The Court hereby denies such request and instead directs Plaintiff to file the appropriate motion for same in accordance with the Local Civil Rules.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and Plaintiff's partial motion to dismiss the Counterclaim is granted.  Defendant is granted twenty (20) days from the date of this Opinion and the accompanying Order to amend the Third Counterclaim.  Plaintiff's request for an award for the costs of suit is denied.

An appropriate Order accompanies this Opinion.


DATED:   December 27, 2006                          _/s/ Jose L. Linares_____
                                                    United States District Judge

18